CARTER v. SOVEREIGN CAMP, WOODMEN OF THE WORLD.
(No. 9205.)

(Court of Civil Appeals of Texas. Ft. Worth. March 13, 1920. Rehearing Denied April 10, 1920.)

1. **Appeal and error** ⚫⟲544(2)—**Findings of fact alone considered on appeal without statement.**

On appeal from a judgment rendered after trial to the court in which the court made findings of fact and conclusions of law, where there was no statement of facts in the record, the Court of Appeals can look alone to the findings of fact to determine the rights of the parties.

2. **Insurance** ⚫⟲718—**Constitution and by-laws of benefit association form part of policy.**

The constitution and by-laws of a fraternal benefit association form part of the policy of insurance of one holding a benefit certificate therein.

3. **Insurance** ⚫⟲817(1), 827—**Insured conclusively presumed to know constitution and by-laws of benefit association.**

The holder of benefit certificate in a fraternal benefit association is conclusively presumed to know the constitution and by-laws of the association which form part of his policy, so that a finding that he did not know a provision thereof will be disregarded.

4. **Insurance** ⚫⟲748—**Failure to give notice of engaging in saloon business forfeits certificate.**

Where the by-laws of a fraternal benefit association provided that a beneficiary certificate should become null and void if insured engaged in the saloon business without giving notice to the clerk of the camp and paying an additional assessment, the failure of the beneficiary to give such notice after engaging in that business is an absolute defense to recovery on the certificate unless the association is estopped to rely thereon.

5. **Insurance** ⚫⟲755(1)—**Association not estopped to forfeit in absence of reliance on failure to expel.**

Where the by-laws of a benefit association provided for the expulsion or other punishment

of a member engaging in the saloon business and required notice and payment of additional assessments to avoid nullification of the benefit certificate, the beneficiary cannot recover on the theory that the association was estopped to rely on the defense that insured engaged in such business without giving the required notice without showing reliance by insured upon his being expelled in accordance with the by-laws.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by Mrs. Mattie Carter against the Sovereign Camp, Woodmen of the World. Judgment for defendant, and plaintiff appeals. Affirmed.

Samuels & Brown, of Ft. Worth, for appellant.

H. S. Lattimore, of Ft. Worth, for appellee.

MILLER, Special Judge. Inasmuch as no question is raised about the pleadings, a statement of them is not necessary to determination of this appeal.

The case was tried below before the court without the intervention of a jury. In response to the request of the parties, the court filed his conclusions of fact separate from his conclusions of law, in accordance with the provisions of article 1989 of the Revised Statutes of Texas. The record contains no statement of facts.

The court's findings of fact and conclusions of law are as follows, to wit:

Findings of Fact and Conclusions of Law.
In the Forty-Eighth District Court in and for Tarrant county, Texas.
Mrs. Mattie Carter v. Sovereign Camp, W. O. W. 45697.

In response to the request of the attorneys herein I prepare the following findings of fact and conclusions of law:

I find as a fact:

(1) That on the 10th day of February, A. D. 1910, Sovereign Camp, Woodmen of the World, through Local Camp, Lone Star No. 2, of Texas, issued to Frank M. Carter a beneficiary certificate for $2,000, payable upon his death to his wife, Mrs. Mattie Carter. The monthly assessment on said policy was $2.75 and local camp dues of 25 cents.

(2) That said policy provided for the payment of $100 for the erection of a monument upon the approval of the proof of loss.

(3) The policy also provided that the constitution and by-laws of the Sovereign Camp, Woodmen of the World, application for membership, and medical examination should constitute the contract between the order and the member. But the certificate did not provide that Carter's engaging in the saloon business would forfeit his certificate unless he gave notice in writing to the clerk within 30 days after embarking in the business and paying 50 cents per month additional for each $1,000 of insurance carried in the beneficiary certificate.

(4) The by-laws contained the following provisions:

"(b) The beneficiary certificate of a member who shall engage in any prohibited occupation shall thereby become null and void unless such member shall within thirty days after engaging in such prohibited occupation notify the clerk of his camp, in writing, of such change of occupation, and thereafter, while so engaged, pay an additional sum of fifty cents on each monthly installment of assessment for each one thousand dollars of his beneficiary certificate, or six dollars additional per annum on each one thousand dollars of his beneficiary certificate.

"(c) Provided that, if a member becomes or is employed as a saloon keeper, bartender, or be engaged in the retailing of intoxicating liquors as a beverage, legally or illicitly, and the possession of a United States revenue license may be taken as evidence thereof, or in the making, compounding, distilling, rectifying or brewing of malt, spirituous, vinous or intoxicating liquors, or in the distribution or delivery of the same, the camp of which he is a member may expel him therefor under the provisions of division 'e' of the prescribed by-laws, in which event his beneficiary certificate shall be null and void."

(5) The by-laws also contain the following provisions:

"Sec. 68. When a beneficiary certificate has been in force for five consecutive years immediately preceding the death, while in good standing, of the member holding the same, the payment thereof shall not be contested on any ground other than that his death was intentionally caused by the beneficiary or beneficiaries, or by the hand of justice, or from the direct result of drinking intoxicating liquors or from the use of opiates, cocaine, chloral or other narcotic or poison, or shall die while engaged in war, except in defense of the United States of America."

"Sec. 96 (a). No officer, employé or agent of the Sovereign Camp, or of any camp, has the power, right or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary or waive any of the provisions of this constitution or these laws, nor shall any custom on the part of any camp or any number of camps with or without the knowledge of any sovereign officer have the effect of so changing, modifying, waiving or foregoing such laws or requirements. Each and every beneficiary certificate is issued only upon the conditions stated in and subject to the constitution and laws then in force or thereafter enacted.

"(b) The constitution and laws of the Sovereign Camp of the Woodmen of the World now in force, or which may hereafter be enacted, by-laws of the camp now in force, or which may be hereafter enacted, the application and certificate shall constitute a part of the beneficiary contract between this society and the member."

(6) That the local camp, Lone Star No. 2, was the agent of the Sovereign Camp, Woodmen of the World, for the collection and remit-

tance of the assessments and dues to which the Sovereign Camp was entitled on the beneficiary certificate of Frank M. Carter. All dues were collected by local clerk, and paid by him to local banker. paid out by latter on warrant ordered by lodge, signed by clerk and consul commander, and forwarded to head banker at Omaha, Neb.

(7) That under the constitution and by-laws it was the duty of the consul commander, upon obtaining information that the member had engaged in the saloon business, to appoint a committee to investigate, and, if it developed that the member had engaged in the business, to cause him to be tried before the lodge, which lodge had the authority to expel, fine or reprimand the member and in the case of expulsion his certificate would be annulled.

(8) That on or about December, 1915, Frank M. Carter engaged in the saloon business as a bartender, and later became the proprietor of the saloon, but sold out the business and retired about the 15th of March, 1917. He purchased the business March 10, 1916, and was owner of said saloon until March, 1917.

(9) That Frank M. Carter did not engage in any business after March 15, 1917, and died on the 29th day of July of that year.

(10) That Frank M. Carter paid regularly each month the assessment of $2.75 and the local camp dues of 25 cents per month for each and every month from the time he became a member up to and including the month in which he died.

(11) That after his death his widow furnished proof of loss, which proof of loss contained the statement that he had been engaged in the saloon business prior to his death.

(12) That W. H. Lennon, the consul commander, knew when Frank M. Carter engaged in the business as bartender and also knew when he purchased the business and became proprietor of the business, and also knew when he sold out and retired from business, as he frequently was in the place of business where Carter worked, and which he afterwards run as proprietor. Lennon also knew that Carter did not engage in any other business after he sold out his saloon, as he visited Carter.

(13) That W. H. Lennon did not report in the lodge room that Carter had engaged in the business of barkeeper or proprietor of a saloon, did not appoint a committee to make any investigation, and did not make inquiry of the clerk as to whether or not Carter was paying the additional assessment of 50 cents per month on each $1,000 of his beneficiary certificate.

(14) That Frank M. Carter did not receive or have in his possession a copy of the constitution and by-laws, and that he did not know that the constitution and by-laws provided that his beneficiary certificate would be annulled if he engaged in the saloon business and failed to pay the clerk 50 cents additional for each $1,000 of his certificate.

(15) That Frank M. Carter died from tuberculosis in July, 1917.

(16) That Frank M. Carter paid the sum of $66 in assessments and died after he engaged in the saloon business.

220 S.W.—16

## Conclusions of Law.

From the foregoing facts I make the following conclusions of law:

(1) That the provisions of the constitution and by-laws to the effect that engaging in the saloon business without paying the additional 50 cents per month on each $1,000, and not notifying the clerk, forfeited and annulled the policy.

(2) That the failure of the local camp to try Frank M. Carter for engaging in the saloon business without paying the additional assessment did not waive the forfeiture of the policy.

(3) That the payment by Frank M. Carter of the assessment of $2.75 per month and the camp dues did not continue him in good standing after he engaged in the saloon business, and his policy was therefore not in force for five years .immediately preceding his death.

(4) Wherefore I render judgment in favor of plaintiff, Mrs. Mattie Carter, for the sum of $66 together with all costs in this behalf incurred, being the amount of assessment and dues paid after the policy was annulled. The clerk is ordered to attach and make a part of the record the accompanying copy of constitution and by-laws of the Woodmen of the World, same being marked Exhibit A.

## Conclusions of Law.

[1] This court can look alone to the findings of fact of the trial judge in determining the rights of the parties. Bogart v. Cowboy State Bank & Trust Co., 182 S. W. 678, 682.

[2] The constitution and by-laws of the appellee constitutes part of the policy sued on. Bennett v. Sovereign Camp, Woodmen of the World, 168 S. W. 1023, 1028.

[3] While the court states, in subdivision 14 of his findings of fact:

"That Frank M. Carter did not receive or have in his possession a copy of the constitution and by-laws, and that he did not know that the constitution and by-laws provide that his beneficiary certificate would be annulled if he engaged in the saloon business and failed to pay the 50 cents additional for each $1,000 of his certificate"

—the presumption is conclusive that he knew the contents of the constitution and by-laws and knew that his certificate would become void upon engaging in the saloon business, unless within 30 days after engaging in such business he notified the clerk of his camp in writing thereof. McWilliams v. Modern Woodmen of America, 142 S. W. 641, 643–644.

[4] The findings of the lower court failing to show that the proper notice of the insured engaging in the saloon business was given to the clerk of the camp as provided in subdivision (b) of the by-laws quoted in subdivision 4 of the court's findings, we conclude that the beneficiary certificate sued upon herein became null and void; and the failure of the insured to give such notice constitutes an absolute defense herein unless that appellee is estopped to set up such defense.

[5] It seems to be elementary that in order for a person to avail himself of the law of estoppel in a case like the one at bar, as that defense is pleaded in this suit, it must be shown that he relied upon his being expelled in accordance with the provisions of subdivision (c) of the by-laws upon engaging in prohibited business; failing to show such reliance, it seems that the appellee is not estopped to set up the defense which it has set up herein.

We think the judgment appealed from should be affirmed; and it is so ordered.

DUNKLIN and BUCK, JJ., were disqualified to sit. The Governor of the state appointed GEO. E. MILLER and MARVIN H. BROWN to sit with Chief Justice CONNER in this case.

⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes