**SOVEREIGN CAMP, W. O. W., v. SCOTT.**
**(No. 747.)**

(Court of Civil Appeals of Texas. Beaumont. April 19, 1922. Rehearing Denied Jan. 22. 1923.)

1. **Appeal and error ⬡265(1)—Exception to denial of new trial sufficient to justify consideration of findings of fact without formal exception thereto.**

Where defendant against whom judgment was rendered filed a motion for new trial upon the overruling of which exception was taken and notice of appeal given, the findings of fact might properly be considered on appeal, although no exceptions thereto had been filed in the trial court; the assignments attacking the correctness of the findings by reference to the statements of fact which had been brought up.

2. **Insurance ⬡726½—Night watchman taking care of locomotives held "hostler" within by-laws of beneficial association.**

Under the by-laws of a fraternal beneficial association providing for the payment of an increased assessment by persons engaged in hazardous occupations among which were those of locomotive hostlers and engineers, a night watchman for a lumber company whose duty it was to look after and take care of the locomotives, to cool them down at night, oil, water, coal, and fire them up in the morning, was a "hostler."

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Hostler.]

3. **Insurance ⬡726½—Member of fraternal beneficial association running locomotives for lumber company held "locomotive engineer" within by-laws.**

Where a member of a fraternal beneficial association was employed by a lumber company to run its locomotives, he became a "locomotive engineer" within the by-laws of the association classifying locomotive engineers as engaged in hazardous occupation and subject to payment of increased assessments.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Engineer.]

4. **Insurance ⬡817(2)—Burden on beneficiary to show that fraternal beneficial association was estopped to claim forfeiture.**

In a suit by a beneficiary under a fraternal benefit certificate claimed by the association to have been forfeited because deceased had engaged in a hazardous occupation without notice to the association or the payment of a higher rate, the burden was on plaintiff to make out facts showing that the association was estopped to claim forfeiture because the local camp clerk had actual knowledge that deceased was engaged in such occupation.

5. **Insurance ⬡748—Casual conversation between insured's wife and local camp clerk of insurer held insufficient as notice of change of occupation of insured.**

Where the by-laws of a fraternal beneficial association provided for payment of increased assessments if insured should become engaged in hazardous occupation, such as that of locomotive hostler or engineer, a conversation between insured's wife and the clerk of the local camp more than two years after insured had become employed as hostler, and before he became engineer, wherein she mentioned that her husband had been in a wreck, that the engine had turned over, how lucky it was that he was not killed, and how fortunate that he had the insurance, held insufficient as proper and timely notice of change of occupation.

6. **Insurance ⬡819(3)—Evidence held not to show knowledge by insurer that insured was engaged in hazardous occupation so as to estop it from claiming forfeiture.**

In a suit on a fraternal benefit certificate wherein defendant association claimed forfeiture of the certificate because insured had become engaged in a hazardous occupation without giving notice to insurer and paying an increased assessment, evidence held insufficient to warrant a finding that defendant's local camp clerk actually knew that insured was engaged in such occupation when he accepted payment of assessments at the ordinary rate so as to establish an estoppel to claim forfeiture.

7. **Insurance ⬡755(1)—Negligence in failing to remember to notify insurer of change of occupation held to prevent beneficiary from setting up equitable estoppel to forfeit certificate.**

Where a member of a fraternal beneficial association paying the ordinary rate became engaged in hazardous occupation within the meaning of the certificate and thereby subject to payment of increased assessments, but forgot to notify insurer's local camp clerk of such a change of occupation and to pay the increased rates, the beneficiary under the certificate could not invoke equitable estoppel to declare a forfeiture of the certificate on the ground that insurer's local camp clerk had knowledge of the facts, since a party who knows the true situation or is negligent in failing to remember cannot invoke an equitable estoppel to defeat the legal rights of other party who has not been guilty of any misleading conduct or is not equally in error.

Appeal from District Court, Newton County; V. H. Stark, Judge.

Action by Pearl Scott against Sovereign Camp, Woodmen of the World. Judgment for plaintiff, and defendant appeals. Reversed and remanded on rehearing.

Russell & Seale, of Nacogdoches, for appellant.

Wightman & Forse, of Newton, for appellee.

CHILTON, Special Judge. [1] Appellee objects to the consideration of the assignments of error on the ground that no exception was filed by appellant in the trial court to the conclusions of fact filed by the trial judge. A statement of facts is brought up, and the assignments objected to attack

the correctness of the conclusions of the trial judge by reference to the statement of facts. Appellant filed a motion for a new trial, upon the overruling of which an exception was taken and notice of appeal given. This has been held sufficient without the entry also of a formal exception to the findings of fact. Temple v. Watkins Land Co. (Tex. Civ. App.) 81 S. W. 1188; Thompson v. State, 23 Tex. Civ. App. 370, 56 S. W. 603; Clover v. Clover (Tex. Civ. App.) 224 S. W. 916.

Plaintiff, appellee, instituted this suit to recover $1,100 alleged to be due upon a beneficiary certificate issued to M. Scott, her deceased husband, in which she is named as beneficiary. Defendant, appellant, denies liability upon the ground that at the time of the death of Scott such certificate had become forfeited and was null and void for the reason that Scott had entered what is called a hazardous occupation, and had failed to notify the clerk of his camp and pay an increased amount of dues as required under the constitution and by-laws of the association. Plaintiff in reply pleads that defendant is estopped from claiming the forfeiture.

M. Scott joined the Woodmen of the World at Call, Tex., in 1909, and this beneficiary certificate was issued to him. His occupation at that time was that of a locomotive engineer, requiring the payment of an additional or larger amount in dues or assessments, while a member is so engaged, than those paid by members engaged in nonhazardous or ordinary occupations. These additional dues were paid by Scott for three or four years. He then entered the meat market business, which is not classed in the by-laws as among the hazardous occupations, and shortly afterwards his dues were reduced to the amount applicable to an ordinary occupation. The camp clerk testified, and this is the only testimony in that connection, that the reduction in dues was at Scott's suggestion; he stating that he was no longer engaged in the hazardous occupation of a locomotive engineer and asking that the dues be reduced to the ordinary rate. He continued in the meat market business for several years, and then gave up that occupation and entered the employment of the Kirby Lumber Company at Call as night watchman. It was a part of the regular duties of Scott as night watchman to look after and take care of the locomotives operated by the company, to cool them down at night, oil, water, coal, and fire them up in the morning. At times, as extra work he would do switching about the yards of the lumber company, and even upon occasions take the place of an absent engineer and run the trains of the company. A little more than four months prior to his death, he took the position of engineer with the same company—that is, he became daily and regularly employed in the occupation of operating a locomotive—and so continued until the time of his death. He was killed on September 9, 1919, by the explosion of the engine which he was then operating.

Section 43 of the constitution and by-laws of the defendant association, stating in substance that part material here, provides that if a member of the association "engaged in any of the occupations or business mentioned in this section," among those mentioned being the following, "brakemen of railway freight trains, locomotive engineers and firemen, switchmen, hostlers and other similar railway or steamship employees," that such member shall within 30 days notify the clerk of his camp and while engaged in such occupation shall pay on each monthly assessment 30 cents for each $1,000 of his beneficiary certificate in addition to the regular rate, and any such member failing to notify the clerk and to make such payments shall stand suspended, his beneficiary certificate shall be forfeited, and be null and void.

[2, 3] In view of the regular duties performed by Scott as a part of his employment as night watchman, we think he became subject to the increased rate of assessment upon taking that position some three years or more before his death. He became by occupation a "hostler" within the meaning of the by-laws above mentioned; "a railway employee whose duty it is to care for locomotives at the roundhouse." 21 Cyc. 1112. Probably the other duties performed as extra work and on special occasions did not render him subject to the rate applicable to persons regularly engaged in the occupation to which such duties pertain, but we do not decide this point, as it is not necessary in the view we take of the case. Again, he unquestionably became subject to the higher rate of assessment when he became a locomotive engineer about four months before his death.

After the amount of his dues and assessments were reduced to the amount payable by a member engaged in an ordinary or nonhazardous occupation, at the time he entered the meat market business, Scott did not pay any additional or increased dues. He did not notify the clerk of the local camp within 30 days after he took the position of night watchman and hostler, nor did he notify the clerk that he had entered the occupation of locomotive engineer 30 days after his re-entry into that occupation. The certificate had therefore become forfeited under its terms and under the by-laws of the association.

[4] However, it is contended by plaintiff that the defendant association is estopped from claiming the forfeiture on the ground that the local camp clerk had actual knowledge of the occupation of Scott, and with such knowledge collected and accepted certain amounts in dues and assessments as being all that was necessary, and that the member paid these amounts thinking and believing that the full amount required was being paid. The

burden is upon plaintiff to make out the facts constituting an estoppel. 21 C. J. 1250.

[5, 6] It is not claimed that any express notice was given to the clerk at any time. The only approach to that is the testimony of Mrs. Scott that about eight months prior to her husband's death, when paying his dues for him with money which he gave her for the purpose, as was her custom, she mentioned to the clerk that her husband had been in a wreck, that an engine had turned over out on the tram road, and how lucky it was that he was not killed, and how fortunate that he had this insurance; but this was only a casual conversation, and the clerk denies any recollection of it. This occurred about eight months prior to the death of Scott, and was more than two years after he had become employed as night watchman and hostler, and about four months prior to his entry into the occupation of locomotive engineer, and therefore at best could not be considered as proper and timely notice of either change of occupation. A number of circumstances are in evidence which it is asserted support the conclusion that the clerk actually knew of the occupation of Scott; such, for instance, that the clerk, J. C. Gee, was and had been for a number of years postmaster at Call, a town of only about 350 people, his long acquaintance with Scott, the proximity of the post office to the place where Scott was employed, about 300 yards, that Scott would sometimes switch cars on a track within about 50 yards of the post office, that Scott in going to and returning from his work would pass near the post office in greasy overalls, and one or two other circumstances of lesser consequence. Also it is testified that it was a matter of general repute in the community that Scott "was in the train service," as one witness puts it, "that everybody knew what Mr. Scott's occupation was," as stated by another witness. The clerk denied that he ever saw Scott switching, and denied that he knew what his occupation was, or that he had entered a hazardous occupation, and it may be mentioned in support of the clerk that Scott's work, prior to the time he became an engineer, was done at night and in the early morning, and the clerk worked at the post office in the day time after 7:30 o'clock. And it cannot seem very surprising that the clerk should not be able to speak with definiteness as to the occupation of Scott, when, after witnesses have testified and the matter has been subjected to close examination, it is still a matter of some doubt as to how his occupation should be properly classified; that is, prior to the time he became employed as a locomotive engineer, about four months before his death. The evidence as we have mentioned refers in a most general way to that period of about 3½ years from the time Scott entered the employment of the lumber company until his

death, and nothing is presented tending in any definite way to show that the camp clerk knew that Scott had become regularly employed as a locomotive engineer shortly before his death. Nor do we think, in view of the testimony of the clerk to the contrary, that it satisfactorily warrants a finding that the clerk actually knew what Scott's occupation was at any time during the period of time in question.

A correct appraisal of the proof presented by plaintiff is that it may be sufficient to justify the conclusion that, from time to time during the period after Scott entered the employment of the lumber company, the clerk had notice of circumstances sufficient to put him upon inquiry as to the occupation of Scott, and that, if the inquiry which would ordinarily be suggested by these circumstances had been prosecuted, he would have ascertained what the duties of Scott were under his employment, and that he had entered a hazardous occupation. But, as we have said, the by-laws require that the member shall within 30 days after entering one of these hazardous occupations give notice to the camp clerk of that fact, and it is the duty of the member first of all to give this notice. To hold that this notice may be dispensed with and evaded and the failure of the member to give it may be excused in this indirect and uncertain way would in effect put upon the camp clerk the duty and burden of pursuing inquiries and making investigations as to the employments and occupations of members. It would in practical operation result in a rule visiting upon the association a sort of constructive or implied notice as to the occupations of members based upon mere circumstances incidentally and in a vague and most informal way coming under the observation of the clerk. This we believe would be perversive of the whole plan and purpose as reflected by the by-laws with reference to changes of occupations by members and the giving of prompt notice thereof to the clerk and the payment of the increased dues provided for. It is contemplated that a member entering into one of these hazardous occupations shall give direct and personal notice to the clerk of such fact. It is not made the duty of the clerk to detect and discover the occupations of members.

The case relied upon by counsel for appellee to sustain the judgment in this case, and in fact the only case cited by appellee, is that of Sovereign Camp, Woodmen of the World, v. Putnam (Tex. Civ. App.) 206 S. W. 970, and it so happens that the opinion in that case was delivered by the writer of this opinion. In the Putnam Case there was no question as to the notice to clerk of the entry of Putnam into a hazardous occupation, or what is there called a prohibited occupation, immediately after his entry into such occupation. That point was not debated, it was unmistakable and admitted, and for many years

afterwards the clerk with full notice collected what was understood to be the amount of dues and assessments chargeable to Putnam, and the member paid such dues fully believing and understanding that the correct amount was being collected and paid. In that case it was said:

"The local clerk had notice of all facts relating to, affecting, and controlling the amounts payable by Putnam, and demanded and accepted certain sums as being sufficient, and Putnam relied upon this as being correct, and the Sovereign Camp is estopped from claiming a forfeiture for insufficient payments. * * * Both Putnam and the clerk of the camp were acting in absolute good faith; each thinking and believing at all times that the full amount necessary and required was being paid and collected. There is not the slightest intimation of any intentional wrong on the part of either, or any purpose to evade the payment of any proper amount due, or on the part of the clerk not to collect all amounts. * * * Had there been an understanding between them by which the clerk undertook to waive the requirements of the by-laws, or even if it were shown that Putnam knew as a matter of fact that he was not paying the amount of dues and assessments required by the terms of the by-laws, then we would have a different case before us."

[7] In the present case, aside from the question of the insufficiency of the evidence to show notice to the clerk, we still have the fact that the member must have known that he was not paying the right amount of dues. He had formerly paid these higher rates for several years, and the only explanation is that he merely forgot about it. To forget constituted negligence on his part. A party who knows the true situation, or is negligent in failing to remember, cannot invoke an equitable estoppel to defeat the legal rights of the other party, at least where the other party has not been guilty of any misleading conduct or is not equally in error.

Pomeroy, Eq. Jurisp. (3d Ed.) § 810; 21 C. J. 1126, 1129. The facts in this case do not show any such mutual mistake and misunderstanding on the part of the member and the clerk as was present in the Putnam Case.

The following cases, while dissimilar in their facts, we belive in principle sustain the correctness of our decision in this case: Sov. Camp, W. O. W. v. Rothschild, 15 Tex. Civ. App. 463, 40 S. W. 553; Bennett v. Sov. Camp, W. O. W. (Tex. Civ. App.) 168 S. W. 1023; Carter v. Sov. Camp, W O. W. (Tex. Civ. App.) 220 S. W. 239; Grayson v. Grand Temple (Tex. Civ. App.) 171 S. W. 489.

The facts failing to establish an estoppel and justify relief against the forfeiture on that ground, the judgment appealed from was erroneous and, must be reversed, and judgment here rendered in favor of appellant.

## On Rehearing.

We adhere to our original conclusion that the facts and circumstances shown do not satisfactorily warrant the holding that the association is estopped from claiming the forfeiture incurred. We think the evidence insufficient to sustain the plea of estoppel. We believe, however, that we were in error in rendering judgment for appellant, and instead the case should be reversed and remanded.

It seems within the range of possibility that appellee, plaintiff, may be able with aditional evidence to make out a proper case of estoppel under principles applicable in that respect. That it cannot be correctly held, from the admitted or clearly established facts shown in the record before us on this appeal, that it is conclusive as a matter of law that plaintiff cannot recover on another trial.

Therefore it is ordered that the motion for rehearing filed by appellee be granted, and the judgment appealed from is now reversed, and the cause remanded.